## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>v.<br><br>ELIX SKIPPER; SAMANTHA WALKER, individually, and on behalf of her minor children, ANTHONY WALKER, JR., and ALEXIS WALKER; STACEY COLIN, individually, and on behalf of her minor children, JAHLIL COLIN, NYASIA COLIN, ELIJAH COLIN; MALACHI COLIN; SPARKLE MAUPIN, individually, and on behalf of her minor child, KAZIAH HUTCHIN; KENYATTA HARRIS-BROOKS, individually, and on behalf of her minor children, ANIYLA BROOKS, CAMIYAH BROOKS, and CANNAN BROOKS; CHRISTINA BUSH, individually and on behalf of her minor child, GABRIELLE JAMESON; EARNESTINE PARKER-BROWN (JOHNSON); LATREASA BANKS; NICKE'L PRATHER; JAYLIN PRATHER; DANYOTTA THOMAS, individually, and on behalf of her minor children, BA-KARI THOMAS, TONEY THOMAS, JR., TRISTAN THOMAS, and KVON THOMAS; SAMANTHA HERNDON, individually, and on behalf of her minor child, DECREI STEPHENS; VALECIA JONES, individually, and on behalf of her minor children, BRIANNA | CIVIL ACTION FILE NO.:<br><br>_____ |

JONES and ANTONIO JACKSON JR.;                )
RHODENA KENNEDY, individually,                )
and on behalf of her minor children,          )
SAKAL RAENIR ADAMS, and                       )
STEVEN DONTE ADAMS, JR..;                      )
AHSARAH KENNEDY; ASIYYAH                       )
KENNEDY; LATONYA WILLIAMS-                     )
SIMMONS, individually, and on behalf of)
her minor children, JANAI SIMMONS,            )
ADARIA SIMMONS, AUDREYAH                       )
SIMMONS, and JAMIRION SIMMONS; )
JARQUARIS WILLIAMS;                            )
DONTTRAVIOUS WILLIAMS; SARI                    )
WILLIAMS; AY'MERYIA CAREY;                     )
and HEZEKIAH BAKER.                            )
                                              )
                    Defendants.               )
_____             )

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW Illinois Union Insurance Company ("Illinois Union") and files

this Petition for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and  2202, and

Fed. R. Civ. P. 57, to determine the rights and obligations of the parties, alleging and

showing as follows:

## INTRODUCTION

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201,

to determine and resolve questions of actual controversy involving a Premises

Pollution Liability Portfolio Insurance Policy bearing Policy No. PPI G46793353

001 issued by Illinois Union to Ventron Management, LLC ("Ventron") (the

"Policy"). Brooks Crossing Atlanta Apartments LP ("Brooks Crossing Atlanta") and

Brooks Crossing GP, Inc. ("Brooks Crossing GP") are also insureds under the Policy. Brooks Crossing Atlanta and Brooks Crossing GP are collectively referred to herein as "Brooks Crossing." Ventron and Brooks Crossing are collectively referred to herein as "Insureds."

2.     Illinois Union seeks a declaration that it has no duty to pay amounts in connection with the settlement of a civil action against the Insureds in the State Court of Clayton County, Georgia, styled *Valencia Jones et al. v. Brooks Crossing Atlanta Apartments, LP, et al.*, bearing Civil Action File No. 2017CV01483 (the "Underlying Action"), in which the Insureds consented to judgments in favor of the Defendants without the consent of Illinois Union. A true, accurate, and correct copy of the Complaint in the Underlying Action is attached hereto as Exhibit "A."[1]

## THE PARTIES

3.     Illinois Union is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business in the state of Pennsylvania.

4.     Upon information and belief, Elix Skipper is a citizen of and domiciled in the State of Georgia, Clayton County.

---

[1] The Complaint was amended on several occasions, and the final Fifth Amended Complaint is attached as Exhibit "A." The allegations of the differing versions of the Complaint do not ultimately impact the issue of coverage raised by this Petition.

3

5.      Upon information and belief, Samantha Walker and her minor children, Anthony Walker Jr. and Alexis Walker, are citizens of and domiciled in the State of Georgia, Henry County.

6.      Upon information and belief, Stacey Colin and her minor children, Jahlil Colin, Nyasia Colin, and Elijah Colin, are citizens of and domiciled in the State of Georgia, Gwinnett County.

7.      Upon information and belief, Malachi Colin is a citizen of and domiciled in the State of Georgia, Gwinnett, County.

8.      Upon information and belief, Sparkle Maupin and her minor child, Kaziah Hutchin, is a citizen of and domiciled in the State of Georgia, DeKalb County.

9.      Upon information and belief, Kenyatta Harris-Brooks and her minor children, Aniyla Brooks, Camiyah Brooks, and Cannan Brooks, are citizens of and domiciled in the State of Georgia, DeKalb County.

10.     Upon information and belief, Christina Bush and her minor child, Gabrielle Jameson, are citizens of and domiciled in the State of Georgia, Clayton County.

11.     Upon information and belief, Earnestine Parker-Brown (Johnson) is a citizen of and domiciled in the State of Georgia, Douglas County.

LEGAL\66574653\1

12.     Upon information and belief, LaTreasa Banks is a citizen of and domiciled in the State of Georgia, Gwinnett County.

13.     Upon information and belief, Nicke'l Prather is a citizen of and domiciled in the State of Georgia, Gwinnett County.

14.     Upon information and belief, Jaylin Prather is a citizen of and domiciled in the State of Georgia, Gwinnett County.

15.     Upon information and belief, Danyotta Thomas and her minor children, Ba-Kari Thomas, Toney Thomas Jr., Tristan Thomas, and Kvon Thomas, are citizens of and domiciled in the State of Georgia, Gwinnett County.

16.     Upon information and belief, Samantha Herndon and her minor child, Decrei Stephens, are citizens of and domiciled in the State of Georgia, Fulton County.

17.     Upon information and belief, Valecia Jones and her minor children, Brianna Jones and Antonio Jackson Jr., are citizens of and domiciled in State of Alabama, Mobile, County.

18.     Upon information and belief, Rhodena Kennedy and her minor children, Sakal Raenir Adams and Steven Donte Adams, Jr., are citizens of and domiciled in the State of Pennsylvania, Philadelphia County.

19.     Upon information and belief, Ahsarah Kennedy is a citizen of and domiciled in the State of Pennsylvania, Philadelphia County.

20.    Upon information and belief, Asiyyah Kennedy is a citizen of and domiciled in the State of Pennsylvania, Philadelphia County.

21.    Upon information and belief, LaTonya Williams-Simmons and her minor children, Janai Simmons, Adaria Simmons, Audreyah Simmons, and Jamirion Simmons, are citizens of and domiciled in the State of Georgia, Clayton County.

22.    Upon information and belief, Jarquaris Williams is a citizen of and domiciled in the State of Georgia, Clayton County.

23.    Upon information and belief, Donttravious Williams is a citizen of and domiciled in the State of Georgia, Clayton County.

24.    Upon information and belief, Sari Williams is a citizen of and domiciled in the State of Georgia, Douglas County.

25.    Upon information and belief, Ay'meryia Carey is a citizen of and domiciled in the State of Georgia, DeKalb County.

26.    Upon information and belief, Hezekiah Baker is a citizen of and domiciled in the State of Ohio, Hamilton County. (All of the foregoing individuals collectively referred to hereinafter as "Defendants").

## <u>JURISDICTION AND VENUE</u>

27.    This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the

LEGAL\66574653\1

matter in controversy, exclusive of interest, attorneys' fees and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

28.    This Court has personal jurisdiction over Defendants because they are residents of the State of Georgia, asserted claims of liability in underlying state court litigation in this District, seek to recover on the consent judgments entered in said litigation, and contend that coverage is afforded under the Policy for those judgments.

29.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this action seeks a declaration respecting the application of a policy of insurance issued to the Insureds and purporting to afford liability coverage for acts that occurred in the district, and liability claims asserted by the Defendants in underlying state court litigation in this district.

30.    Venue is proper in the Atlanta Division pursuant to 28 U.S.C. 90(a) because Clayton County is in the Atlanta Division of the Northern District of Georgia.

## FACTUAL BACKGROUND

### *Pollution Liability Policy Issued by Steadfast Insurance Company*

31.    Effective June 20, 2014, Steadfast Insurance Company (a Zurich company, and hereinafter referred to as "Zurich") issued a Z Choice® Real Estate Environmental Liability Policy to Ventron Realty Corp., including as additional

Named Insureds Ventron Management, LLC, Brooks Crossing Atlanta Apartments LP and Brooks Crossing GP Inc. (the "Zurich Policy"). A true, accurate, and correct copy of the Zurich Policy, including Endorsement No. STF-ZRE-103-A CW (06/10), is attached hereto as Exhibit "B."

32.     The Zurich Policy affords third party liability coverage on a "claims-made and reported basis" for "loss" an "insured" is legally obligated to pay as a result of a "claim" resulting from an "existing pollution event" or from a "new pollution event." *Id.*

33.     Subject to other terms and provisions as stated therein, the Zurich Policy affords coverage for an "existing pollution event" if the "claim" for such is reported to Zurich in writing during the "policy period", and furthermore affords coverage for a "new pollution event" if first "discovered" during the "policy period" and the "discovery" is reported in writing during the "policy period." *Id.*, Sections I. A and B.

34.     The Brooks Crossing Apartments located at 8050 Taylor Road in Riverdale, Georgia was a Covered Location under the Zurich Policy, with coverage for mold retroactive to July 20, 2011. *Id.*, Endorsement No. STF-ZRE-109-A CW (08/12); Endorsement No. STF-ZRE-109-A CW (06/10).

LEGAL\66574653\1

35.     The Zurich Policy has a limit of liability of $3 million for Each Pollution Event and is subject to a $50,000 Each Pollution Event Deductible. *Id.*, Declarations; Endorsement No. STF-ZRE-125-A CW 9 (07/10).

36.     "Claim expenses" is defined in the Zurich Policy to include attorney fees and defense expenses, and such expenses reduce the limit of the Zurich Policy. *Id.*, Sections II.; III. E.

### *2016 Claim Against Ventron, Brooks Crossing Atlanta and Brooks Crossing GP*

37.     Beginning in April 2016, various residents of the Brooks Crossing Apartments alleged, in response to eviction proceedings against them, that their apartments were infested with, and uninhabitable due to, mold. Among these residents were Valencia Jones (a plaintiff in the Underlying Action), and Trammell and Tia Pree (previously plaintiffs in the Underlying Action), who were represented in the eviction proceedings by Eldridge Suggs, IV of The Suggs Law Firm.

38.     On or about May 24, 2016, a claim was received by the Insureds related to the Brooks Crossing Apartments, summarized as follows:

> We have encountered an issue at Brooks Crossing. In our April eviction filings, which are just now going to court, our residents are all filing the same response. That their unit is uninhabitable due to mold issues. So far it's about 6 residents. They all have representation legally. I spoke to the attorney and he says he has 60 residents signed up at Brooks Crossing and plans on filing suit against the property.

The attorney referred to in the summary identified above is Eldridge Suggs, IV of The Suggs Law Firm.

LEGAL\66574653\1

39.    Notice of this claim was submitted to Zurich for coverage under the Zurich Policy by or on behalf of the Insureds on May 31, 2016. A true, accurate and correct copy of the claim notice from the insureds to Zurich is attached as Exhibit "C."

40.    On October 24, 2016, Brooks Crossing Apartments resident John Gregory filed a Complaint against the Insureds (the "*Gregory* Complaint"). A true, accurate, and correct copy of the Gregory Complaint is attached hereto as Exhibit "D." In the *Gregory* Complaint, Plaintiff alleges that his apartment unit was inundated and infested with mold. *Id.*, ¶ 17.

41.    The *Gregory* Complaint alleged that more than seventy other residents of the Brooks Crossing Apartments complained of mold infestation and hazardous living conditions, necessitating repairs to make the premises fit for habitation. *See Id.*, ¶ 18.  Mr. Gregory was represented in his suit by Eldridge Suggs, IV of The Suggs Law Firm. *Id.*

### Pollution Liability Policy Issued by Illinois Union Insurance Company

42.    Effective July 20, 2017, after the allegations of mold in the referenced eviction proceedings, and after the *Gregory* Complaint was filed, Illinois Union issued a Premises Pollution Liability Portfolio Insurance Policy to Ventron Management, LLC as First Named Insured ("Illinois Union Policy"). A true, accurate, and correct copy of the Illinois Union Policy is attached hereto as Exhibit

"E." Brooks Crossing Atlanta Apartments LP and Brooks Crossing GP, Inc. are also listed as Named Insureds on the Illinois Union Policy. *Id.,* Endorsement No. 001.

43.    The Illinois Union Policy affords liability coverage "ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD . . ."  Id. Declarations Page. Specifically, and subject to other terms and provisions as stated therein, the applicable Insuring Agreement of the Illinois Union Policy, in material part, affords Third-Party Claims Coverage for:

> Claims arising out of . . . an "indoor environmental condition", provided the "claim" is first made during the "policy period." Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period," or during any applicable "extended reporting period."

*Id.,* Section I. C.

44.    The Brooks Crossing Apartments, located at 8050 Taylor Road in Riverdale, Georgia, is a Covered Location under the Illinois Union Policy. *Id.,* Endorsement No. 013.

45.    "Claim" under the Illinois Union Policy means in material part "the written assertion of a legal right received by the 'insured' from a third-party . . . , suits or other actions alleging responsibility or liability on the part of the 'insured' for 'bodily injury', 'property damage' or 'remediation costs' arising out of . . . 'indoor environmental conditions' to which this insurance applies." *Id.*, Section V. J.

11

46.     "Indoor environmental condition" under the Illinois Union Policy is defined to include the presence of "fungi" in a building or structure under the circumstances stated in the definition. *Id.,* Section V. AA., as modified by Endorsement Nos. 006 and 011.

47.     "Fungi" is defined in the Illinois Union Policy as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by 'fungi.'" *Id.,* Section V. X.

48.     The Illinois Union Policy states as follows as it relates to assignment:

**Changes and Assignment**
Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

*Id.,* Section IX. I.

49.     The Illinois Union Policy contains a Prior Claims Exclusionary (Broad) Endorsement excluding:

"Loss" arising out of or related to "claims" made against an "insured" prior to the inception date identified in Item 2. of the Declarations to this Policy, as applicable (collectively Prior Claims), along with any current or subsequent "claims" made in conjunction with such Prior Claims (e.g., counterclaims, cross-claims or third-party claims made as part of the Prior Claims, any associated appeals of the Prior Claims, any 'claims" ultimately consolidated with the Prior Claims, or any "claims" involving different plaintiffs but the same collection of operate facts and/or allegations contained in the Prior Claims).

12

*Id.,* Endorsement No. 012.

50.     The Illinois Union Policy also contains a Known Conditions Exclusion which (subject to other terms and provisions as stated therein) excludes coverage for a "loss" arising out of or related to "indoor environmental conditions" in existence and reported to a "responsible person":

> 1.     Prior to the "policy period"; or
> 2.     Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item 2. of the Declarations to the Policy, if any, prior to the effective date of coverage for such "covered location",
>
> and not affirmatively disclosed to the Insurer in an Application or supplemental underwriting materials provided to the Insured to secure coverage for such "covered location" pursuant to this Policy. . .

*Id.,* Exclusion K, as modified by Endorsement No. 011, p. 2.

51.      "Loss" under the Illinois Union Policy for purposes of Third-Party Claims Coverage means "[a] money judgment, award or settlement of compensatory damages, arising from 'bodily injury', 'property damage' or 'remediation costs'. . . including associated 'extra damages' and 'legal defense expense.'" *Id.,* Section V. EE.

52.     "Extra damages" under the Illinois Union Policy means:

> Punitive, exemplary or multiplied damages, and civil fines, penalties and assessments, but solely to the extent that the punitive, exemplary or multiplied damages, and civil fines, penalties and assessments:
> 1.     Are insurable under applicable law; and

13

2.      Arise out of a "pollution condition" . . . that results in "bodily injury". . . [or] "property damage" . . . to which this insurance otherwise applies.

*Id.,* Section V. T.

53.    "Responsible person" under the Illinois Union Policy means "any employee of an 'insured' responsible for environmental affairs, control, or compliance at a 'covered location', or any 'key executive' of, officer or director of, or partner in, an 'insured'." *Id.,* Section VI. QQ.

54.    The Illinois Union Policy provides $4 million in coverage Per Indoor Environmental Condition, and is subject to a $50,000 Per Indoor Environmental Condition retention. *Id.,* Declarations; Endorsement No. 002. The total aggregate limit of the Illinois Union Policy is $8 million. "Legal defense expenses" reduce the limit of the Illinois Union Policy. *Id.,* Section III. D.

55.    Pursuant to the Illinois Union Policy, Illinois Union has the right to defend claims of alleged liability against any insured for whom coverage under the Policy is allegedly afforded. In this regard, the Policy provides in relevant part:

**III.   DEFENSE AND SETTLEMENT**

A.    The Insurer shall have the right and, subject to the "self-insured retention" obligation, the duty to defend the "insured" against a "claim" to which this insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim" to which this insurance does not apply. The Insurer's duty to defend the "insured" ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the

14

> "insured" refuses a settlement offer as provided in Subsection **E.,** below.

*Id.,* Section III.A.

56.     Pursuant to the Illinois Union Policy, no insured is authorized to settle claims of alleged liability against any insured without the express written consent of Illinois Union Policy, such consent not to be unreasonably withheld.  In this regard, the Policy provides in relevant part:

### VII.   REPORTING AND COOPERATION

> \* \* \*

> **C.**     No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", without the written consent of the Insurer. Nor shall any "insured" retain any consultants or "catastrophe management firms", or incur any "first-party remediation costs" or "catastrophe management costs" with respect to a "first-party claim", without the prior consent of the Insurer, except for "emergency response costs".

*Id.,* Sections VII.C. and IX.K.

57.     Pursuant to the Illinois Union Policy, the Insureds' duties of cooperation include the duty to "[c]ooperate with the Insurer in the investigation, settlement or defense of the 'claim'" (*Id*., Section VII.B.3.) and to "[p]rovide the Insurer with such information and cooperation as it may reasonably require." *Id.*, Section VII.B.5.

LEGAL\66574653\1

58.     Pursuant to the Illinois Union Policy, full compliance by the Insureds with all requirements and obligations of the Policy is a condition precedent to obtaining coverage and the right to indemnity under the Policy.

## THE UNDERLYING ACTION

59.     On September 13, 2017, the Underlying Action was filed on behalf of the Defendants, alleging the pervasive presence of mold in their units, resulting in alleged injury and damage to the Plaintiffs. *See generally* Exhibit "A." The plaintiffs in the Underlying Action were and are represented by Eldridge Suggs, IV of The Suggs Law Firm, the same firm with whom the Insureds' representative discussed the allegations of mold during the 2016 eviction proceedings reflected in the May 31, 2016 notice to Zurich; the same firm who advised that it had 60 plaintiffs signed up alleging mold at the Brooks Crossing Apartments; and the same firm representing the plaintiff in the Gregory Complaint. *See generally* Exhibits "A,""C," "D".

60.     The original Complaint in the Underlying Action was thereafter amended numerous times to account for changes in the identities of the Plaintiffs therein and to assert varying causes of action, but the basis of the claims continued to be allegedly pervasive mold infestation at the Brooks Crossing Apartments.

61.     Each of the plaintiffs in the Underlying Action began their tenancy at the Brooks Crossing Apartments prior to the effective date of the Illinois Union Policy; first complained of the alleged presence of mold in their units prior to the

LEGAL\66574653\1

effective date of the Illinois Union Policy; and ceased being residents of the Brooks Crossing Apartments prior to the effective date of the Illinois Union Policy.

62.     The Underlying Action was tendered to both Zurich and Illinois Union by or on behalf of the Insureds for defense and indemnity.

63.     Zurich agreed to defend the Underlying Action pursuant to a reservation of rights, raising various potential defenses to coverage.

64.     Illinois Union agreed to defend the Underlying Action pursuant to a reservation of rights, raising various potential defenses to coverage.

65.     At all times material, Illinois Union provided a defense to the Insureds in the Underlying Action and at no time withdrew its defense of the Insureds in the Underlying Action.

66.     On June 22, 2023, Illinois Union received written notice from Zurich that it was agreeing to pay the limit of the Zurich Policy (reduced by fees and expenses incurred in defending the Underlying Action) to resolve the allegations of liability and damages asserted in the Underlying Action.

67.     At this time, the Insureds incorrectly asserted that they were entitled to coverage under the Illinois Union Policy notwithstanding the fact that they had failed to cooperate, settled the Underlying Action without Illinois Union's consent, the claim was first made during the period of the Zurich Policy, and the claim was excluded by the Prior Claims and Known Conditions exclusions.

LEGAL\66574653\1

68.     The Insureds demanded that Illinois Union agree to consent judgments being entered against the Insureds in the total amount of $8 million pursuant to purported "limited liability releases" whereby the amounts of the consent judgments could only be recovered from Illinois Union and not the Insureds. Illinois Union rejected this demand.

69.     In July and August, 2023, the Insureds nonetheless entered into purported "limited liability releases" settling the claims of the Plaintiffs in the Underlying Action by paying to the Underlying Action Plaintiffs/Defendants herein the limit of the Zurich Policy, and further consenting to the entry of judgments against them in the amount of $8 million, recoverable only from Illinois Union to the extent of coverage afforded to the Insureds by Illinois Union.  The "limited liability releases" also contained assignments by the Insureds to the Underlying Action Plaintiffs/Defendants herein of all rights of the Insureds under the Illinois Union Policy.

70.     Chubb did not consent to the purported "limited liability releases" of the claims of the Plaintiffs, did not agree to the entry of consent judgments against the Insureds recoverable only from Illinois Union, and did not agree to the assignments.

## COUNT I – DECLARATORY JUDGMENT

***Illinois Union Has No Duty to Indemnify Because the Insureds Entered Into Releases and Consent Judgments Without the Consent of Illinois Union, Violating Conditions Precedent to Coverage.***

71.     Illinois Union restates and re-alleges Paragraphs 1 through 70 as though fully set forth herein.

72.     Illinois Union has no obligation to Defendants as it relates to the "limited liability releases" and/or consent judgments in the Underlying Action because Illinois Union did not consent to either.

73.     The Insureds' unilateral agreement to the "limited liability releases" and consent judgments against them – without the consent of Chubb – was a breach of the duties and obligations of the Insureds under the Illinois Union Policy; compliance with these duties and obligations was a condition precedent to coverage under the Illinois Union Policy; and coverage is consequently not afforded to the Insureds for the "limited liability releases" and consent judgments against them to which the Insureds unilaterally agreed, and Illinois Union has no obligation to pay the Defendants for the judgments, either as purported judgment creditors or as purported assignees of the rights of the Insureds.

74.     Furthermore, the Insureds breached their duty to cooperate, to the detriment of Illinois Union, when the Insureds unilaterally settled the Underlying Action. Accordingly, the Insureds failed to fulfill a condition precedent to coverage.

## COUNT II – DECLARATORY JUDGMENT

***Illinois Union Has No Duty to Indemnify Because the Claim Was Not First Made During the Illinois Union Policy Period.***

75.     Illinois Union restates and re-alleges Paragraphs 1 through 74 as though fully set forth herein.

76.     Illinois Union has no obligation to the Insureds or to the Defendants to pay Defendants for the "limited liability releases" and consent judgments agreed to by the Insureds in the Underlying Action because the liability asserted in the Underlying Action, and the basis of the "limited liability releases" and consent judgments was for an "indoor environmental condition" that was not first made against the Insureds during the period of the Illinois Union Policy.  Rather, the claim constituting the basis for alleged liability and damages in the Underlying Action was first made on May 24, 2016 and reported to Zurich on May 31, 2016.

## COUNT III – DECLARATORY JUDGMENT

***Illinois Union Has No Duty to Indemnify Because The Prior Claims and Known Conditions Exclusions Preclude Coverage.***

77.     Illinois Union restates and re-alleges Paragraphs 1 through 76 as though fully set forth herein.

78.     Even if it could be shown that the claim was first made during the period of the Illinois Union Policy, coverage is precluded pursuant to the Prior Claims exclusion which expressly excludes "loss" arising out of or related to "claims" made against an "insured" prior to the Policy effective date of July 20, 2017 ("Prior

LEGAL\66574653\1

Claims"), and which exclusion applies to current or subsequent "claims" made in conjunction with such Prior Claims, as well as "claims" involving different plaintiffs but the same collection of operate facts and/or allegations contained in the Prior Claims.

79.     Furthermore, even if it could be shown that the claim was first made during the period of the Illinois Union Policy, coverage is precluded pursuant to the Known Conditions Exclusion which expressly excludes "loss" arising out of or related to "indoor environmental conditions" in existence and reported to a "responsible person" prior to the period of the Illinois Union Policy. Consequently, Illinois Union has no obligation to pay Defendants for any judgment obtained in the Underlying Action.

80.     To the extent it could be shown that Illinois Union has an obligation to the Insureds or to the Defendants to pay Defendants for the "limited liability releases" and consent judgments agreed to by the Insureds in the Underlying Action despite the foregoing breaches of conditions to coverage, exclusions and limitations on coverage, the applicable limit of the Illinois Union Policy is the $4 million Per Indoor Environmental Condition limit, subject to a $50,000 Per Indoor Environmental Condition retention, and further subject to reduction of the limit for "legal defense expenses." Exhibit "E," Declarations; Endorsement No. 002.

81.     Illinois Union is informed and believes that Defendants contend that the Illinois Union Policy either affords coverage and/or does not exclude coverage for the "limited liability releases" and judgments. As such, an actual and present dispute exists between Illinois Union and the Defendants as to whether coverage is afforded under the Illinois Union Policy.

82.     Inasmuch as a dispute currently exists between Illinois Union and the Defendants concerning their respective rights and obligations under the Illinois Union Policy, Illinois Union is entitled to a judicial determination of its rights and obligations pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201.

WHEREFORE, Illinois Union respectfully requests that this Court enter an Order:

1.     Declaring that Illinois Union Insurance Company has no obligation to the Insureds or to the Defendants to pay Defendants for the "limited liability releases" and consent judgments agreed to by the Insureds in the Underlying Action;

2.     Allowing a trial by jury on any material issues of fact; and

3.     For such other and further relief as this Court deems just and proper.

LEGAL\66574653\1

Respectfully submitted this 26th day of October, 2023.

/s/ Alycen A. Moss
Alycen A. Moss
Georgia Bar No. 002598
Cozen O'Connor
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:  (404) 572-2052
Facsimile:   (877) 728-1396
E-mail:   amoss@cozen.com

*Counsel for Plaintiff Illinois Union Insurance Company*